And proceed. Good afternoon, Your Honors. For the record, I'm Ed Weigelt. I represent Nautilus Marine Enterprises and M. Thomas Waterer. Can you move more into the microphone? I'm having trouble with it. There you go. Is this better, Your Honor? I hope so. Thank you. Again, for the record, I'm Ed Weigelt. I represent the appellants, Nautilus Marine Enterprises and M. Thomas Waterer. You still need to be a little louder. A little louder. I'll work on that. Your outside voice. My outside voice. All right. Thank you. I'll work on mine, too. Okay. This case has a long and protracted history. It originates from the 1989 Exxon Valdez oil spill. So we are approaching our 30-year mark next spring. During the course of this litigation, after 17 years of litigation, the parties entered into a settlement agreement. That settlement agreement was entered into in September of 2006 and has now been the subject of four appeals, action for reformation in state court. And we're back arguing on basically the same type of issue that we started in 2006. When this case was settled in 2006, Exxon's position was, we're going to pay what we correctly owe, whatever that number may be. And that's the gist of the settlement. And that's been their position certainly for the last 10 years. At that point in time, the parties agreed to the principal damages. They agreed to the accrual dates for those damages, and they agreed to who would be paid those damages down to the penny. The parties, however, did not agree to the rate of interest, and they decided to submit that issue, a very narrow issue, the parties thought at that point in time, to Judge Holland for determination so that the correct amount could be computed. Pending Judge Holland's determination of the correct amount, Exxon paid $8.5 million effectively towards the settlement. At that point in time, their liability, as we now know, wasn't $11.5 million. It was about $11.6 million. So what happened at the time of settlement, instead of paying the full amount of money that they actually owed arising from the oil spill and paying the correct amount, they underpaid Nautilus Marine by $3.15 million. Now, that number represents the additional interest of what they owed based on their argument versus what the court ultimately decided. That was the genesis of the settlement. And under the settlement, Paragraph 3.1 says we're going to submit the correct rate of interest to Judge Holland. He's going to do the math. He will decide if additional money is owing. After the settlement, a Seahawk decision case came down, and it was determined that the determination of interest was going to be governed by state law, which applicable to this case at this point in time was 10.5 percent simple interest. There was then a dispute arising under the terms of the agreement, because under the agreement there is an incorporated judgment form which says it's compounded. So that was incorporated as a term of the settlement agreement, and there became an issue of whether or not that was a contractual document. Long story short, Judge Tan ruled in a Reformation lawsuit in state court that it wasn't a contractual document, and Judge Holland is free to do what he wants with it. He can change some of the terms. Well, we're now back trying to figure out how much interest is owing. The new issue, though, isn't what was owed as of September 2006, which, again, was $11.8 million. Actually, that's not correct, Your Honor. Nautilus was owed $6.7 million. They were short paid by 3.1. The settlement, however, included a partial settlement with CIP, so those numbers on the original settlement were grouped together. However, the actual damages for the parties were specifically itemized down to the penny, both in the underlying letter agreement as well as in the context of the settlement agreement itself. So each party, CIP, they're entitled to their share, and Nautilus Marine is entitled to its share. What's happened since 2006 is that on the prior appeal to the Ninth Circuit, Judge Holland's award of interest, which was compounded, was reversed. So the original judgment is vacated, and I'm going to put a quotation mark around vacation because the original appeal was on a very limited issue. If we look at the judgment itself, there's five issues relating to multiple things, only one of which resulted to how much additional interest was owed. The appeal was limited to that very narrow issue. That's it. The rest of the judgment wasn't touched, wasn't appealed, and pursuant to the terms of the settlement agreement, those other issues were not even appealable under Section 4 of the contract. The Ninth Circuit's court appeals decision just says reversed. Judge Holland vacated the judgment. Now when we get back ten years later to Judge Holland saying, okay, there is an additional interest owed, $3,150,000, there's now a gap issue of ten years with no interest being paid. It's our position that interest is due and payable to the appellants under two different alternative theories, but both of which come under a basic concept of what is just, what is correct, what was intended. And the answer to the ---- But doesn't Kaiser cause you a problem, the Supreme Court case? No, it doesn't, Your Honor, because if you look at the general proposition in Alaska law. Well, I mean, is it sort of like, okay, if something's reversed for what you don't think it's a minor issue as opposed to a major issue, then it doesn't matter? No. It doesn't matter in the context that interest, what really happened was a remediator. So it's sent back down to recalculate what the correct amount of interest being owed is, with the rest of the judgment sticking. So to the extent there is a judgment that's now entered as, once there's a final determination as to the amount owed, the interest that's owed on that should relate back to the original judgment of July, actually under the contract. It's not the judgment, it's the award. Judge Holland's award was on July 13, 2007. Under paragraph 3.3 of the contract, post-judgment, because that's the label they used, interest on the award accrues from the date of the award, not the actual judgment. And originally there was about a week delay before the entry of the judgment,  So Kaiser doesn't undermine the party's contractual obligations, nor even though, substantively, what happened here is a remediator to correct the amount, as opposed to a change in the liability. So if we look under the paragraph 3.3, contract liability would continue, and the interest rate which would apply under that particular paragraph, then, is going to be the federal interest rate, in effect, as of the date of that decision, July 13, 2007. If that contract provision doesn't apply, and the judgment is truly vacated, and we're back to square one, then we're back to square two, clearly, Alaska law. And as a general point. But the Alaska law that you cite, the unwavering policy case, is talking about where, it's not talking about where damages have been paid. Here, all the damages were paid. This whole thing has been about the interest, right? Yes, Your Honor, but let me make a distinction. Under Alaska law, prejudgment interest is an economic damage in and of itself. So to determine the correct amount owed, we would say we take the lost income, the extraordinary costs, the lost profits, and the prejudgment interest, add those up for a total amount of damages that were owed at the time of the settlement, with respect to Naltzverein, was $3.15 million more than what was actually paid. Well, I have to ask you a question that I make sure that gets answered. Now, are you the same person that, in the declaration, that's being challenged as the best evidence? Yes, Your Honor. So how am I going to ask you questions about that? This is kind of a little unusual. Just go ahead. Okay. So they're claiming that Exxon's claiming that it wasn't the best evidence, and therefore the declaration should be thrown out, and therefore that there's not any evidence. So there are not a lot of cases, as far as I can tell, that are reversed based on the best evidence rule. And there's no, you know, I don't know. How do we, let's say it wasn't the best evidence. I don't know whether it was or it wasn't, but do they have to show prejudice or what? I think we'd have to go back a step, and the question is, what evidence was introduced in this particular case? Well, I'm talking about your declaration. I understand that, Your Honor. But step one is, Exxon has not introduced any evidence that Naltzverein is entitled to, is not entitled to its damages. There's no evidence. There's no affidavit from Exxon. There's no affidavit from CIP. There is no evidence, and their entire argument is predicated on a distribution provision in the contract, as opposed to specific provisions down to the penny, computing the damages and the underlying letter agreement. But you talk about things that aren't in the record. And so that's where they're, I think, claiming that the best evidence isn't before the Court, that you talk about certain agreements or documents or things along those lines. I don't know whether they exist or not. I don't know whether what you said is true or not. I don't know, does that go to the weight, as opposed to the admissibility? I don't know. My declaration addresses the background of this case. The background of this case is that as of September 2006, there was a sharing agreement between CIP and Nautilus. Okay, but we don't have that agreement. We don't have that agreement in front of you. There was also obligations that were owed. It was not only a matter of an agreement, and Judge Holland recognized that in his decision. He said, your declaration was replete with opinions and conclusions as to whether there was an agreement and what it said. So it's two things, opinion and best evidence. On the one hand, and all the opinion and all the best evidence had to do with circumstances which preceded the settlement agreement. And the settlement agreement said very clearly, five million to you, three and a half to CIP. And that was the basis of Exxon saying, and the interest should be figured the same way. 5.1 is a distribution instruction for money to the attorney's trust accounts for further distribution. Paragraph 5.2 also says that Exxon has no responsibility for the distributions or the allocations. No, but they have the responsibility of paying. And they received instruction how to write the checks. Right. But writing the instruction to write the checks is not the same thing as their liability. But what happened in between then, you settled with CIP. So Exxon's position is that the total supplemental interest award should be split between Exxon and CIP based on the damages which have been received in the settlement agreement, as I understand it. Let me play devil's advocate. Do you agree with that? I understand their argument, but here's the proof. What's wrong with that argument? What's wrong with that argument is that if there was an allocation distribution which was in effect regarding the supplemental proceeding, one, there is no evidence of that. They didn't submit any by anybody. None. Second, even if that is true, then if that agreement is in effect, we still get to share in the monies paid by Exxon to CIP. But they didn't pay Nautilus. They took the money and gave it to CIP. And if there's a sharing agreement. Share and give it to CIP. And now they want to give Nautilus a share. Share to CIP as well. So if they want to have their cake and eat it too, if there is a sharing agreement, then we would be entitled to a share of the monies that CIP also collected. Because that's what the sharing agreement. There was a sharing. That didn't happen. Exxon didn't pay us. They won't even disclose what was paid or any information or the agreement. Unless there's a further question, I would reserve the balance of my time. Well, just before you sit down, I mean, just so I understand, your affidavit said there were no documents basically. Is that right? There are no documents, but let's break that down. Okay? So the document you have is a settlement agreement or the relevant documents that weren't produced for what? With CIP. Yeah. Okay. And we asked for that in the state court litigation. They didn't produce it because we had no interest in it. That was their argument at the time. And we've never seen it. There is no sharing agreement that applies to the supplemental. There are no documents there, so there is no best evidence. There is no document. So if this got remanded and they put you under oath, you'd say there are no documents. There is no sharing agreement with regard to the supplemental proceedings. You're taking the position that the letter agreement which preceded the settlement agreement is not a document? No, Your Honor. Under the letter agreement, it specifically says that Exxon is going to pay CIP-1 number, which is its damages down to the penny. And that letter agreement then says Exxon is to, quote, pay, uses those words precisely, Nautilus is going to pay its damages down to the penny. What happened in the drafting of the settlement agreement is they dropped the word pay. That's effectively what happened. So what if we just throw your declaration out? Do you lose? I don't believe so, Your Honor, because I think paragraph 5 is still, at most, it can only be construed as a distribution or an allocation provision. Instruction, please pay so-and-so, please pay, make this how you distribute the check. And paragraph 5.2, 5.3 come back and say Exxon has no responsibility for what you guys do. So we allocate based on actual damages? Right.  We'll give you some more time. Thank you, Your Honor. Good morning, and may it please the Court. My name is Dawn Sestito, and I'm here today representing ExxonMobil Corporation and Exxon Shipping Company. Do you want to reserve time, rebuttal time, for your cross-appeal? I don't. Well, maybe two minutes. Okay. So a couple of kind of preliminary factual matters, some of which Mr. Nautilus has already stated. So first, this case settled in 2006. There is a settlement agreement, and that settlement agreement governs, I believe, the three issues that are before the Court today, pre-judgment interest, post-judgment interest, and allocation. All damages, all of the compensatory damages were fully paid in 2006, and the undisputed amount of pre-judgment interest was also paid in 2006. So in 2006, Nautilus Marine received $5 million. What has been litigated since then is whether and what amount of additional pre-judgment interest that Nautilus Marine might be owed. And at the time, it wasn't clear that they would be owed any additional pre-judgment interest. There have been delays, and those delays were acknowledged in the settlement agreement, and they were provided for by the parties in the settlement agreement. So I'm going to walk through the three issues and point to the contractual provisions that govern each. So first, pre-judgment interest. The District Court's decision that pre-judgment interest stopped accruing on November 1, 2006 should be affirmed. That's clearly explicitly provided for in the settlement agreement in Paragraph 3.1. That's Excerpt of Record 668, and I'll just quote it. Quote, the period for which interest shall be payable is July 1, 1992, or July 1, 1993, quote, through November 1, 2006, or the date the court enters judgment, whichever is earlier. As the District Court noted, there's nothing ambiguous about that provision. It clearly cuts off pre-judgment interest as of November 1, 2006, and the reason for that is because all of the principal damages had been paid by that date. That is what the parties contracted for. It was acknowledged by the parties back in 2007 by Attorney Philip Widener, who negotiated the settlement agreement for Nautilus Marine. That was an oral argument and filings that were made in 2007. Nautilus has two arguments in its papers against this. The first is pointing to the letter agreement, but they fail to acknowledge that the letter agreement has the same exact language in it that cuts off pre-judgment interest, again, quote, through November 1, 2006, or the date the court enters judgment, whichever is earlier. That's at Excerpt of Record 554. Nautilus Marine also points to, and Mr. Weigelt has mentioned, a purported gap in interest accrual, pointing to Alaska's policy in favor of awarding pre-judgment interest. But here, Nautilus Marine settled in 2006 and compromised its rights to pre-judgment interest. And there were expressed acknowledgments in the settlement agreement that there might be delays. So, for example, the settlement funding date as to the supplemental settlement amount is defined in Section 2.12.3 as, this is a quote, 10 days following the date that all proceedings in the Ninth Circuit or any other appellate court with respect to the final judgment have been finally concluded and resolved, including proceedings in the district court on remand. That's at Excerpt of Record 667. So the parties anticipated that there might be appeals on these issues, and, in fact, the payment of the supplemental settlement amount is still not even due because these appeals are continuing and there's not been a judgment that's now final following all of those appeals. Section 3.1 makes clear that the additional amount should be paid, quote, when the district court has rendered its decision on the correct rate of pre-judgment interest and such decision is final on appeal. That exact language also appears in the letter agreement. So the letter agreement site is Excerpt of Record 554 at paragraph 3, and the settlement agreement site is Excerpt of Record 668 at paragraph 3.1. And then finally, you know, Exxon isn't even required to make the supplemental settlement payment after the settlement funding date until it receives payment instructions from CIP and Nautilus Marine. So the parties clearly anticipated that there could be delays in the payments of these amounts. So that's as to pre-judgment interest. Post-judgment interest, again, the district court's award of post-judgment interest from the February 2017 judgment should be affirmed. The settlement agreement provides post-judgment interest from any award. This is the language in full from Section 3.3. Post-judgment interest shall accrue on any award by the district court of additional pre-judgment interest pursuant to paragraph 3.1, or Rule 82's attorney's fees pursuant to paragraph 3.2, pursuant to 28 U.S.C. Section 1961. So I think Kaiser is applicable here. It's clearly this provision for post-judgment interest is clearly governed by Section 1961. And Kaiser tells us when a judgment is final for purposes of Section 1961. And what has to happen is that that judgment has to be supported by the evidence. The damages have to have been ascertained. And in this case, the 2007 judgment was based solely on the terms of the settlement agreement itself. It was reversed by the Ninth Circuit on the grounds that the court had to consider, the district court had to consider its extrinsic evidence. So here's the quote from that decision. We conclude that the district court erred in failing to consider extrinsic evidence regarding whether the parties agreed to compound interest. What happened after that is that the case then went to state court. There was a three-day bench trial where evidence was heard, extrinsic evidence about whether there was an agreement to compound interest or not. It's that extrinsic evidence that forms the basis of the 2017 judgment. And indeed, the 2017 judgment reaches the exact opposite conclusion of the 2007 judgment. In 2017, the court found there was no agreement to pay compound interest. And so compound interest isn't what's calculated under the 2017 judgment. So under Kaiser, the only judgment that properly ascertains the damages in this case is the 2017 judgment, not the 2007 judgment. Finally, moving to the third issue, Exxon's Cross-Appeal and Allocation. CIP was a party to the settlement agreement but settled out in 2010. The issues about Mr. Weigelt's declaration. Yeah, I'm totally confused. Okay. So explain to me your best evidence objection. And then tell me what the standard of review is for such a claim. And exactly how the district court violated the best evidence. Sure. So there was a question. So the settlement agreement clearly did not anticipate that one party might settle out because it requires identical payment instructions signed by both Nautilus Marine and CIP. That can't happen now because CIP settled in 2010. So the question is. Is there any evidence in the record of the assignment, that settlement agreement? Well, I don't know that it's an issue of an assignment. And that's not what Mr. Weigelt's declaration went to. No, no, no. But that's part of your contention. It's based on the purported settlement and assignment, right? Well, it's just based on the settlement. The fact that CIP no longer has a claim that's been litigated because they settled in 2010. And I don't know that it's in this excerpt of record. But certainly. I don't think so. When the case went to trial in 2010 before the state court, CIP had settled out at that point. And all of the proceedings in the case since that date have been solely with Nautilus Marine. Right. But isn't your fundamental assertion based on the settlement that's not in the record? No. Actually, our fundamental assertion is based on the fact that there are. And they've not disputed that there's not going to be joint written instructions in terms of how to disperse the supplemental settlement amount. Yeah. But what I'm getting at is you're making a best evidence objection based on a lack of evidence on your part. No. Well, I actually. Is this a pretty good evidence case? No. Our argument is that the court has to decide what the allocation of that supplemental settlement amount is. They haven't disputed that there needs to be an allocation. That's not been in dispute by Nautilus Marine. What they, in our position, was it should be based on the initial, the instructions that were given for the initial settlement amount in 2006 because those are the only written instructions we've ever received. What Mr. Weigel's declaration does is it says in an attempt to get around that and say those initial settlement instructions, Judge Holland, aren't relevant, what he said was that those initial payment instructions were based on other business relationships, and I'm quoting, quote, other business relations, loans, joint fish processing agreements, and a joint prosecution agreement, which included sharing the initial settlement proceeds. And that the joint prosecution agreement and sharing obligations were terminated shortly after the settlement. And Judge Holland took that and quoted it in his decision and said, quote, in light of this evidence, it would not be reasonable to allocate the supplemental settlement amount based on how the initial settlement amount was allocated. So did you have an opportunity to present contrary declarations and evidence? Well, we don't have any information about the joint prosecution agreements or their sharing agreements or why in 2006 they chose to allocate the payment differently than the underlying damages. The settlement agreement clearly could have said the payment of the initial settlement amount or the supplemental settlement amount should be in accordance with the damages. Because as Mr. Weigelt points out, those damages are listed in the agreement to the pending. How are you really prejudiced? And why should this why are you asking to reverse this, you know, like let's go another 10 years? Well, we're actually hoping to not go another 10 years. And what I was going to ask is. Isn't the practical result you end up with a remand and an evidentiary hearing? Well. And likely the same result because probably at the end of the day, even if you throw out the declaration, the most logical way to do it is to allocate it based on the damages, right? Well, we don't believe that's true. We believe that the most logical way to allocate it is based on the only written instructions that have ever been received. But if they say, no, we need to take external evidence, then we're back to the prior remand and we have a full evidentiary hearing about that. Well, you have no basis. You say to which content contest the facts they had. Well, so they didn't submit other than Mr. Weigel's declaration. They didn't submit extrinsic evidence on this point. And nor did you. That's right. Take Mr. Weigel's deposition and find out just what were those arrangements that he testified to very vaguely in his opinion that changed the percentage from 58% to 82%. No. I mean, what our proposal is is that they had the opportunity, they responded to our evidentiary objections. For some other points on which we raised best evidence, they actually submitted the underlying evidence. In this case, they chose not to. And that response is at Excerpt of Record 268. So they specifically chose not to submit whatever underlying written agreements or cancellation of those agreements exist. So our position is that's done and the decision should be made on the record that's now before the court. And this court is in just as good a position as the district court to look at the agreement itself and determine whether the allocation should be made on the written, based on the prior written instructions, which we believe is the correct determination. Do you have a case that says when we reverse on the best evidence rule that the other side automatically wins as opposed to a reevaluation of the evidence or a new trial, a new hearing? No, I do not have a case that addresses that. But I think because they chose not to. If the best evidence rule is a good objection, that evidence of Mr. Weigel's declaration should not have been considered. And the only other evidence as to allocation is in the settlement agreement 5 versus 3.5. That's exactly right. So our position is if you take out, if you get rid of Mr. Weigel's declaration because it shouldn't have been considered in the best evidence rule, all that's left is to look at the settlement agreement. No one else proffered any extrinsic evidence. Or you say you allocate based on damages. I'm sorry? Or else you say otherwise, that if that provision of the settlement agreement doesn't apply or isn't definitive, then you allocate based on the damages, which was the net result in this case. Well, and I think that a court could find that. Our position is that it should be allocated based on the prior written instructions. But either way, it can be done on the basis of the settlement agreement. I understand. Okay. And I'll reserve the rest of my time. Okay. I will try to be exceedingly quick here. We'll give you two minutes. Oh, thank you. I don't know if I'll need that. The fundamental issue on the evidence is there was none submitted by Exxon. There is no sharing agreement. Take their position. There's no evidence by you. Well, my declaration is saying, one, there is no sharing agreement that applies to this that I am aware of. I'm the one who's been involved in all of this litigation. I'm the one who was there with Judge Tan when we had meetings in camera regarding their secret confidential settlement agreement, which we never get. Okay? Why do they pay CIP and not us? Because there is no sharing agreement. That's what happened. Okay? I was there. I do have personal knowledge of that. I can't come forward with a sharing agreement on the supplement agreement that I've never seen or heard of, and neither has my client. Exxon did not come in and say, here's a copy of the sharing agreement. We settled with CIP, and, oh, by the way, they've assigned us something. Well, wait a minute. There is no assignment. There is no declaration from Exxon. There is no declaration from Michael Shoup. There is no declaration from CIP saying there is an assignment or there was a sharing agreement or that Nautilus Marine owes us any money. None of that stuff was ever placed in issue. Had that been placed in issue, in hindsight, we probably would have been more elaborate in our presentation. Other than a short-nailed declaration from me, we aren't aware of that. I think the argument in the allocation is a complete red herring because even Judge Tan's, as he found, the letter agreement was really the settlement. And underlying even that settlement was we're going to pay what we correctly owe, and what is that? That is the damages as specified in the letter agreement down to specifically, and it's also referenced specifically in the settlement agreement itself, down to the penny, what is owed to both parties. If we want to have an alternative allocation throughout all the evidence, then we should enforce the settlement agreement strictly as written. There is no adjustment from the total amount owed because what that contract says is that Exxon owes the seafood processors, which is now left by standing, is Nautilus, and here's the formula to compute it. Now, if we do that, the additional money owed isn't going to be $3.15 million. It's going to be $5 million because that, in fact, also encompasses CIPs. We adjusted for that in our presentation and our request to Judge Holland, and I think that is the correct result. But if we took a strict interpretation of the contract, Exxon needs to write a check for all of the money, not just a portion of it, but for all of it. And then if they want to come in and say, we have another claim by an assignment somehow, let them come forward and do that. They haven't done that. Ultimately, in the context of the gap period of time, Exxon wants to make this issue additional interest from 2006-2007 to the date of the final judgment from Judge Holland in 2017 as a contractual issue. It's not. It's not a contractual issue. The settlement agreement is not the best drafted in the world. There are provisions which were not clear. It does not address what happens after November 1. Under Alaska law, interest applies unless it's going to result basically in a double recovery. And I'm going to cite a case, which is not for the proposition of the case, but it's a methodology, which is Bank v. Trust Company, and it is 671 Pacific 2nd, 875, and it is a 1983 decision. And what that case said is the method of the court's methodology in this type of situation basically involves three questions. Question one, is there an agreement that there is no interest? None. That has to be an express agreement. In the context of that question, the answer is no. There is nothing in this agreement that says there is no interest. Rather, what happened in this agreement is it included interest through November 1, which is a significant date because October 30th was the trial date. Yes, Your Honor. The second step was, is there agreement to pay interest? The answer is yes. They, in fact, paid interest past the time of settlement. And also paragraph 3.3 of the agreement provides for interest from the date of the award, not the judgment. And if both of those fail, then we're back down to statutory interest, pre-judgment interest under Alaska law, and that's the default provision. Thank you, Your Honor. Thank you, counsel. Your rebuttal on the Cross Appeal? Yes. Just very quickly. So to be very clear, what Mr. Weigelf has said repeatedly is that there is no evidence of a sharing agreement related to the supplemental settlement amount. He's not disputing that there were written agreements that governed the sharing of the initial settlement amount. And Exxon's argument to Judge Holland was that at this point, because those are the only written instructions that have ever been and can be given, that that's what should govern. Judge Holland relied on Mr. Weigelf's declaration that those agreements have since been terminated in making his decision. Now, I'm not taking the position that if he had not considered that evidence, that I think what he would have then done, because there was no other extrinsic evidence submitted, is just looked at the settlement agreement, compared the different provisions, and decided whether it should be allocated based on the agreement. And that's what we're asking this Court to do. But Mr. Weigelf and Nautilus Marine has never disputed. They may have argued before that they should get a copy of the settlement agreement with CIP, but they've never disputed that CIP settled out of the case with Exxon in 2010. We had an entire trial before the State Court. In fact, I think it's in the findings of facts and conclusions of law that CIP had settled out. We had a three-day bench trial without CIP as a party to it because they resolved the case. Is that part of your best evidence objection? No. Our best evidence objection is solely limited to the fact that they're relying on the existence of sharing agreements and a joint prosecution agreement from 2006 that they claim have been terminated. But inevitably, the calculation, they found it in part on the settlement agreement, which was not produced. And it may or may not be relevant, but it wasn't produced, your settlement agreement. That's right. I mean, it was not produced. There were no – there was no factual or discovery or any other proceedings that occurred here. I'm sorry? I don't – they can't. That's right. Yeah. But we think that the dispute is whether or not under the contract, in light of CIP now being an absent party, how should the additional money that's to be paid be allocated, pursuant to the prior written instructions or pursuant to the damages? Right. I mean, just so we're clear, you didn't produce the settlement agreement to the other party, and they claim that that was a portion of the calculation. Your position is you don't need to see the contents of the agreement because the fact of the settlement is enough. That's right. And it's not the settlement agreement that we're relying on. That goes both ways. I should have been able to see that. I mean, I'm just summarizing kind of where we are. Sure. Yeah. But our argument was we didn't point to any term in a settlement agreement as the basis for why the allocation should be based on the prior written instructions. Okay. Thank you. Thank you both for your arguments. The case argued will be submitted for decision.
judges: Thomas, Callahan, Bea